01

02

03

04

05                          UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
06                                    AT SEATTLE

07    EUGENE MOSS,                        )
                                          )   CASE NO. C14-0194-RAJ-MAT
08            Plaintiff,                   )
                                          )
09        v.                              )   REPORT AND RECOMMENDATION
                                          )   RE: SOCIAL SECURITY DISABILITY
10    CAROLYN W. COLVIN, Acting           )   APPEAL
      Commissioner of Social Security,    )
11                                        )
              Defendant.                   )
12    _____ )

13          Plaintiff Eugene Moss proceeds pro se, but assisted by his mother, in his appeal of a

14    final decision of the Commissioner of the Social Security Administration (Commissioner).

15    The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) after a

16    hearing before an Administrative Law Judge (ALJ).   Having considered the ALJ's decision,

17    the administrative record (AR), and all memoranda, the Court recommends this matter be

18    AFFIRMED.

19                          **FACTS AND PROCEDURAL HISTORY**

20          Plaintiff was born on XXXX, 1979.[1]   He completed the ninth grade of high school and

21    _____

22          1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of
      Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case

REPORT AND RECOMMENDATION
PAGE -1

01   took some community college classes.   (AR 42.)   Plaintiff previously worked as a telephone

02   solicitor, security guard, home caregiver, and fast food worker.   (AR 29, 66.)

03        Plaintiff filed his DIB application in November 2011, alleging disability beginning

04   November 2, 2009.   (AR 147-48.)   His application was denied initially and on

05   reconsideration, and he timely requested a hearing.

06        On December 11, 2012, ALJ Stephanie Martz held a hearing, taking testimony from

07   plaintiff, a lay witness, and a vocational expert (VE).   (AR 36-72.)   On February 7, 2013, the

08   ALJ issued a decision finding plaintiff not disabled.   (AR 17-31.)

09        Plaintiff timely appealed.   The Appeals Council denied review on December 5, 2013

10   (AR 1-6), making the ALJ's decision the final decision of the Commissioner.   Plaintiff

11   appealed to this Court.

## JURISDICTION

13        The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

15        The Commissioner follows a five-step sequential evaluation process for determining

16   whether a claimant is disabled.   *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).   At step one, it

17   must be determined whether the claimant is gainfully employed.   The ALJ found plaintiff had

18   not engaged in substantial gainful activity since the November 2, 2009 alleged onset date.   At

19   step two, it must be determined whether a claimant suffers from a severe impairment.   The

20   ALJ found plaintiff's depressive disorder, anxiety disorder, and obsessive compulsive disorder

21   severe.   Step three asks whether a claimant's impairments meet or equal a listed impairment.

22   ────────────────────────────────────────────────────────
Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
PAGE -2

01  The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

02        If a claimant's impairments do not meet or equal a listing, the Commissioner must

03  assess residual functional capacity (RFC) and determine at step four whether the claimant has

04  demonstrated an inability to perform past relevant work.   The ALJ found plaintiff had the RFC

05  to perform a full range of work at all exertional levels, but with the following nonexertional

06  limitations:   he is able to understand, remember, and carry out simple routine tasks; he can

07  have occasional brief contact with co-workers and supervisors; he should have no contact with

08  the general public; he needs a routine and predictable work environment; and he works best

09  independently.   With that RFC, the ALJ concluded plaintiff was not capable of performing any

10  past relevant work.

11        If a claimant demonstrates an inability to perform past relevant work or has no past

12  relevant work, the burden shifts to the Commissioner to demonstrate at step five that the

13  claimant retains the capacity to make an adjustment to work that exists in significant levels in

14  the national economy.   The ALJ concluded, with consideration of the Medical-Vocational

15  Guidelines and the assistance of the VE, that plaintiff could perform other jobs existing in

16  significant levels in the national economy, such as work as a housekeeping cleaner, assembler,

17  printed product, and sorter.   The ALJ, therefore, concluded plaintiff was not disabled at any

18  time from the November 2, 2009 onset date through the date of the decision.

19        This Court's review of the final decision is limited to whether the decision is in

20  accordance with the law and the findings supported by substantial evidence in the record as a

21  whole.   *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).   Substantial evidence means

22  more than a scintilla, but less than a preponderance; it means such relevant evidence as a

01    reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881

02    F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which

03    supports the final decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278

04    F.3d 947, 954 (9th Cir. 2002).

05         Plaintiff argues the ALJ erred in her consideration of physicians' opinions and the

06    medical evidence, in rejecting his testimony and the testimony of his mother, and in reaching

07    the decision at step five.  Plaintiff also argues error in relation to evidence submitted to, but

08    returned by the Appeals Council.  He requests remand for an award of benefits or, in the

09    alternative, for further administrative proceedings.  The Commissioner maintains the ALJ's

10    decision has the support of substantial evidence and should be affirmed.

11                                              Credibility

12         Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

13    reject a claimant's testimony.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)

14    (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  *See also Vertigan v. Halter*,

15    260 F.3d 1044, 1049 (9th Cir. 2001).  "General findings are insufficient; rather, the ALJ must

16    identify what testimony is not credible and what evidence undermines the claimant's

17    complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).  "In weighing a claimant's

18    credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his

19    testimony or between his testimony and his conduct, his daily activities, his work record, and

20    testimony from physicians and third parties concerning the nature, severity, and effect of the

21    symptoms of which he complains."  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.

22    1997).

REPORT AND RECOMMENDATION
PAGE -4

01      The ALJ in this case found that while plaintiff's medically determinable impairments

02   could reasonably be expected to cause some of the alleged symptoms, his statements

03   concerning the intensity, persistence, and limiting effects of those symptoms were not entirely

04   credible.   Contrary to plaintiff's contention, the ALJ provided a number of clear and

05   convincing reasons in support of this conclusion.

06   A.    <u>Failure to Pursue Treatment</u>

07      The ALJ found plaintiff's pursuit of treatment inconsistent with his allegations as to the

08   extent of his alleged symptoms.   (AR 25.)   Plaintiff alleged disability beginning in 2009, but

09   did not present for mental health treatment during the relevant period until the end of 2010.

10   (*Id.*; AR 253-70 (AMEN Clinics evaluation by Dr. Amy Lazar).)   "Even after this initial

11   presentation, the claimant did not return for six months and this appears to be his only follow up

12   at the clinic."   (AR 25; AR 269.)   Also, despite numerous recommendations to start

13   psychotherapy and behavioral activation, plaintiff did not begin until April 2012.   (AR 25.)

14      An ALJ appropriately considers an unexplained or inadequately explained failure to

15   seek treatment or follow a prescribed course of treatment.   *Tommasetti v. Astrue*, 533 F.3d

16   1035, 1039 (9th Cir. 2008).   Plaintiff asserts he did not pursue treatment due to his lack of

17   resources.   (*See*, *e.g.*, Dkt. 16 at 4.)   *See* Social Security Ruling (SSR) 82-59 (failure to follow

18   prescribed treatment may be justifiable where claimant unable to afford); SSR 96-7p (ALJ

19   should not draw inferences from failure to seek or pursue treatment without first considering

20   explanations for that failure, including an inability to afford treatment).   However, it appears

21   plaintiff was relying on his mother to support him and did not apply for Medicaid until well

22   after his alleged onset date.   (*See*, *e.g.*, AR 63 and Dkt. 16 at 4-5.)   Nor did plaintiff take the

REPORT AND RECOMMENDATION
PAGE -5

01  opportunity to make clear to the ALJ that his failure to seek or pursue treatment was due to a

02  lack of resources.  *See Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012) ("a claimant's

03  failure to assert a good reason for not seeking treatment, 'or a finding by the ALJ that the

04  proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain

05  testimony.'") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

06        Also, other evidence of record provides additional support for the ALJ's conclusion.

07  (*See* AR 246, 249 (plaintiff admitted to "'giving up too soon'" repeatedly in relation to

08  treatment; "He says that during the 1.5 years he did well and kept job he was taking an

09  antidepressant.   The reason he went off meds was because 'I was almost manic, talking all the

10  time, bubbly, not myself'"); AR 255 (plaintiff admitted prior use of medications helped and

11  family and friends saw improvement:  "[B]ut he feels he might have given up too soon.  [H]e

12  reports that now he is ready to make a change and try things for a longer period of time."; "Was

13  first prescribed medication at age 21, but never gave either of them long enough chance to be

14  beneficial."))[2]   The Court finds no error in the ALJ's reasoning.

15  B.    <u>Improvement, Inconsistency, and Exaggeration</u>

16        The ALJ found the record to reveal that, once plaintiff engaged in the recommended

17  treatment, he experienced significant improvement.   (AR 25.)   She stated:

18        Further, the claimant acknowledged partial improvement since the start of
       Sertraline, but continued to allege debilitating symptoms.   However, his
19        testimony and the attorney's contention are at odds with his reports to his
       clinicians.   For example, by June 2012, his panic attacks were significantly less
20        frequent.  [(AR 327.)]   Contrary to the claimant's testimony at the hearing,

21  ─────────────────────

22        2 This evidence is noted not "to invent a new ground of decision[,]" but to provide "additional
    support for the . . . the ALJ's position."  *Warre v. Comm'r of the SSA*, 439 F.3d 1001,1005 n.3 (9th Cir.
    2006).

REPORT AND RECOMMENDATION
PAGE -6

01        that he had one every two to three weeks, the claimant reported to his clinician
that he had not had a "bad one" in at least a year.   At this time, the claimant was

02        also walking his mother's dog to get exercise.   At his August 22nd 2012
appointment, the claimant reported increased energy and improved mood.

03        [(AR 319.)]   His clinician noted increased eye contact.   Thus, it appears that
the claimant's testimony regarding the extent of his symptoms is inconsistent

04        with clinical notes.   However, such over estimation of his symptoms is
consistent with Dr. Harmon's interpretation of the Personality Assessment

05        Inventory (PAI), which she said was suggestive of possible exaggeration or over
reporting of symptoms, though Dr. Harmon also conjectured that these results

06        could be due to feeling overwhelmed.   [(AR 363)].

07 (AR 25.)   The ALJ also contrasted plaintiff's allegation of fatigue with evidence indicating his

08 fatigue "may be attributed to his sleep hygiene, rather than his mental impairments."   (*Id*.)

09 She noted reports that plaintiff stayed up until four a.m. and slept most of the day, and his later

10 efforts to improve his sleep.   (*Id*. (citing AR 286, 307).)

11        An ALJ properly considers evidence of a claimant's improvement with treatment,

12 inconsistency between a claimant's testimony and the record, and evidence of exaggeration.

13 *See Tommasetti*, 533 F.3d at 1039-40 (favorable response to conservative treatment

14 undermined reports regarding disabling nature of pain), and *Tonapetyan v. Halter*, 242 F.3d

15 1144, 1148 (9th Cir. 2001) (ALJ appropriately considers inconsistency with the evidence and a

16 tendency to exaggerate).   Indeed, "[o]ne strong indication of the credibility of an individual's

17 statements is their consistency, both internally and with other information in the case record."

18 SSR 96-7p.

19        Plaintiff points to various documents in the record as detracting from the ALJ's

20 conclusions as to improvement and inconsistency.   However, "[w]here the evidence is

21 susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

22 upheld." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) (citing

REPORT AND RECOMMENDATION
PAGE -7

01  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).   To the extent plaintiff takes a

02  contrary view of the evidence, he fails to demonstrate the ALJ's interpretation of the evidence

03  was not equally rational.   (*See, e.g.*, AR 269 (June 2011:   "Eugene is very pleased the Zoloft is

04  working for him.   He is less depressed, active, more social and overall doing much better. . . .

05  He is not depressed, still anxious at times but even his family and friends have noticed a huge

06  improvement.   He is more outgoing.   He has one to two drinks a week socially.   He is

07  sleeping well."; "Neatly dressed with good eye contact, alert smiling and appearing so much

08  happier than our first visit last Dec.   Speech is calm and clear.   Thoughts are organized and

09  linear.   Mood is positive, no anxiety.   Judgement and insight good."); AR 327 ( July 5, 2012:

10  depressed "'pretty much all the time'" but panic attacks better, one to two years ago had

11  "almost 1x week" but has "been at least a year since he has had a 'bad one'"); AR 321 (August

12  8, 2012:   things the same, nothing changed, but "'I think sometimes I sleep too much and that

13  makes me even more tired'; stays up until five or six am, unable to stay asleep for more than one

14  to two hours); AR 316 (August 22, 2012:   "increased energy, improved mood and increased

15  eye contact;" "he believes counseling has been beneficial."; still having problems with sleep

16  and makes bad food choices; "Pt rts he enjoys walking his Mo's dog and going for walks alone

17  in the evening when there is 'no one else around'"; social anxiety in public interferes with

18  leaving house, "agreed he should get 'out' more and acknowledges walking to be a healthy and

19  beneficial activity which he would like to do more of."); AR 310-12 (October 5, 2012:

20  medication helping "mood, OCD overall."; "Feeling more outgoing and happy."; some

21  drowsiness during day, sleeping well at night; does not eat healthy, no exercise; "Couch potato,

22  likes TV and computer.   Does not like to go outside very much."; "Moderate depression.");

REPORT AND RECOMMENDATION
PAGE -8

01   AR 307 (October 8, 2012:  "feeling 'better than I have felt in awhile'", taking medications as

02   prescribed, setting alarm to wake up, trying not to take naps, going to bed at eleven or twelve

03   and sleeping through night."))

04         Plaintiff also takes issue with the ALJ's reliance on evidence of exaggeration, pointing

05   to other parts of the evaluation by Dr. Harmon as reflecting "no indications of any malingering

06   or exaggeration of symptoms."   (AR 363 (noting plaintiff seemed to give best effort on testing,

07   with a malingering score indicating good effort and cooperation, and another score indicating

08   "he was being credible and did not endorse unrealistic, unlikely mental health symptoms, even

09   when given the opportunity."))   However, testing by Dr. Harmon also reflected possible

10   exaggeration.   (AR 363; *see also* AR 372-73 (PAI testing results suggested plaintiff may not

11   have answered questions in completely forthright manner and may have exaggerated problems,

12   attempted to portray himself in a negative or pathological manner, and presented "with certain

13   patterns or combinations of features that are unusual or atypical in clinic populations but

14   relatively common among individuals feigning mental disorder."; stating clinical hypotheses in

15   report "should be reviewed with these considerations in mind[]" and "clinical scale elevations

16   may overrepresent the extent and degree of significant findings in certain areas."))   The ALJ

17   reasonably considered this evidence and, contrary to plaintiff's contention, explicitly noted Dr.

18   Harmon's clarification that the PAI testing results could have been a reflection of plaintiff

19   "feeling overwhelmed."   (AR 25.)[3]   The Court finds no error in the ALJ's consideration of

20

21        3 The Court declines to address the Commissioner's contention that this evidence constitutes evidence of malingering and obviates the need for clear and convincing reasons to find plaintiff not

22   credible.   As the Commissioner notes, the ALJ nonetheless provided a number of clear and convincing reasons in support of her credibility assessment.

REPORT AND RECOMMENDATION
PAGE -9

01  evidence of improvement, inconsistency, and exaggeration.

02  C.    Plaintiff's Activities

03          The ALJ also concluded plaintiff's activities belied his allegations at hearing.  She

04  contrasted plaintiff's testimony of difficulty driving with the fact he drove himself to the

05  evaluation by Dr. Harmon.   (AR 25 (citing AR 361).)    She found plaintiff's testimony that he

06  was overly cautious while driving inconsistent with an intake form indicating he had "many

07  traffic citations, primarily for speeding[.]"   (*Id.* (citing AR 257).)

08          The ALJ contrasted plaintiff's testimony of significant social phobia and rarely leaving

09  the house with evidence he always maintained a roommate and spent time with friends, "though

10  he attempted to downplay exactly how much [time he spent with friends] at the hearing."   (*Id.*

11  (citing AR 258).)   She compared plaintiff's report he had not been in a relationship since his

12  early twenties with his report to a clinician that he had had ten sexual partners since he was

13  twenty years of age.   (AR 25-26; AR 258.)    She reasoned:  "Such sexual activity indicates a

14  level of social interaction inconsistent with his allegations at the hearing."   (AR 26.)   The ALJ

15  added that, contrary to his testimony, plaintiff reported to several examining sources that he

16  performed all of his own grocery shopping.   (*Id.*; AR 248, AR 272.)

17          The ALJ further stated:

18          Similarly contradictory, the claimant reported that he spent most of his time
            either watching television or playing poker at a local casino.   [(AR 259.)]   In
19          August 2012, the claimant reported that he played frequently in satellite poker
            tournaments around the state when he has enough money.   [(AR 321.)]   Also
20          in August, the claimant played in a poker tournament, placing 12th out of more
            than 250 people.   [(AR 307.)]   He reported that he would like to play in
21          another tournament as soon as he could save some extra money.   While the
            claimant attempted to characterize this outing as a spur of the moment event the
22          result of cajoling by his friends, clinical notes reveal that he had been planning

REPORT AND RECOMMENDATION
PAGE -10

01   to attend this event for weeks and was quite excited by it.  Further, while he
     testified he was not able to repeat it, he clearly communicated to his clinician
02   that he was planning on doing just that if he were able to secure financing.
     Such activity is contrary to the claimant's allegations that he rarely left his
03   home.  It is also contradictory to his claims of lack of concentration and
     difficulty with socialization discussed below.  Furthermore, such an activity is
04   counterintuitive given his alleged phobias regarding germs, crowds, etc.

05   (AR 26.)  (*See also* AR 316 (August 2012:  "Pt rts he will be playing in a poker tournament at

06   the end of the month and is looking forward to playing and believes he will do well."); AR 307

07   (October 2012:  "Pt rts he played in a poker tournament at the end of August and placed 12th

08   out of 250+ people and would like to play in another tournament as soon as he can save some

09   extra money."))

10        The ALJ likewise found inconsistency between plaintiff's allegation of diminished

11   concentration and inability to complete tasks due to his preoccupations and rituals, and

12   evidence in the record.  She pointed to plaintiff's ability to routinely complete poker

13   tournaments, at least one involving more than 250 people and where he spent from four to six

14   hours:  "Presumably, this would involve numerous hands.  It also involves interaction with

15   others and reading social cues, the latter of which the claimant has purportedly struggled."

16   (AR 26.)  She also found plaintiff's persistence through various tests, including exhaustive

17   testing by Dr. Lazar, to undermine plaintiff's allegations he is unable to persist and complete

18   even simple tasks.   (*Id.* (citing AR 253-70, 344-60 (duplicate).)

19        There are "two grounds for using daily activities to form the basis of an adverse

20   credibility determination[,]" including (1) whether the activities contradict the claimant's

21   testimony and (2) whether the activities "meet the threshold for transferable work skills[.]"

22   *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair*, 885 F.2d at 603).   While plaintiff

REPORT AND RECOMMENDATION
PAGE -11

01  denies the evidence of his activities demonstrates his ability to perform in the workplace, the

02  ALJ's reasoning reflects her conclusion that the evidence of plaintiff's activities contradicts his

03  testimony as to the extent of his limitations.   Also, while plaintiff points to his own and his

04  mother's testimony in maintaining error in the ALJ's reasoning, he fails to sufficiently address

05  the numerous inconsistencies identified by the ALJ between that testimony and his continuing

06  allegations as to the degree of his limitations.   Further, while maintaining the ALJ focused on

07  certain aspects of the record to the exclusion of other evidence, plaintiff himself engages in that

08  practice.   For example, while suggesting the ALJ improperly relied on his involvement in a

09  single poker tournament, plaintiff fails to consider the other evidence of record associated with

10  his poker playing.   (*See*, *e.g.*, AR 259 (October 2010:   "Most of my time is spent watching tv

11  at home or playing poker at a local casino.   If I feel ok then sometimes I will hang out with my

12  brother or my friends."); AR 321-22 (August 2012:   "Pt shares he feels 'happy' and enjoys

13  playing strategic games of chess and more recently poker; . . . pt states he enjoys the psychology

14  behind strategic games; the thinking, math, planning are all natural to him; 'I am already

15  thinking 3 moves ahead'; 'No fear attitude' (?); 'Table etiquette' (?), important to follow the

16  rules; pt rts he plays frequently in satellite poker tournaments around the state when he has

17  enough money."; "Pt. plans to play in a big tournament at the end of the month and we will

18  come up with a plan at next appt. to ensure he has enough money to play").)

19       Nor does the Court find persuasive the various other challenges to the ALJ's

20  consideration of plaintiff's activities.   Plaintiff, at best, argues in favor of a contrary

21  interpretation of the evidence without demonstrating the ALJ's interpretation of the record was

22  not rational.   Because the ALJ's interpretation of the record is at least equally rational to that

01  suggested by plaintiff, and because it is well supported by numerous examples, the Court finds

02  no error established.

03  D.    Motivation

04         The ALJ also found there appeared "to be an element of motivation involved."   (AR

05  26.)   "Specifically, the claimant reported that he had 'bounced around in a ton of different jobs,

06  but have never stuck with anything for too long.   I have never found anything I really like to do

07  I guess.'"   (*Id.* (quoting AR 272 (November 2011 evaluation); *also citing* exhibit 2F (AR 259

08  (October 2010:   "I have never been able to find a job that I really like.")))   The ALJ found

09  plaintiff's reports implied he "has not stayed at a job due to his personal preferences, rather than

10  impairment based limitations."   (AR 26.)   She also found motivation issues in relation to his

11  treatment.   She noted, as an example, the fact that plaintiff was able to drive himself to his

12  November 2012 evaluation with Dr. Harmon, that he was taking Sertraline and occasional

13  anxiety medications at that time, and that, despite his allegations regarding infrequent showers,

14  Dr. Harmon noted his adequate hygiene.   (*Id.* (citing AR 361-63).)   "Thus, the claimant was

15  capable of arriving in a timely manner with appropriate hygiene."   (*Id.*)

16         An ALJ may discount a claimant's testimony due to evidence of self-limitation and lack

17  of motivation.   *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-67 (9th Cir. 2001).   Also, "[i]n

18  reaching [her] findings, the law judge is entitled to draw inferences logically flowing from the

19  evidence."   *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (cited sources omitted).

20         The ALJ here reasonably considered specific statements made by plaintiff relating to his

21  past work as calling his motivation into question.   The ALJ also reasonably contrasted

22  plaintiff's allegations with evidence from his treatment.   While plaintiff repeats and elaborates

01  upon his testimony and the testimony of his mother as to his limitations, he does not

02  demonstrate the ALJ's contrary interpretation of the record is not rational, or that the ALJ

03  otherwise erred in finding his testimony or the testimony of his mother not credible.   For this

04  reason, and for all of the reasons stated above, the ALJ's credibility determination should be

05  affirmed.

06                                        Lay Testimony

07        The ALJ addressed the lay witness evidence from plaintiff's mother, Luda Zwilling:

08        Zwilling testified that she saw the claimant once or twice per week.   She
          brought him food, ensured that he had showered and brushed his teeth, washed
09        his laundry, ensured he had enough plates and supplies such as toilet bowl
          cleaner because he did not buy anything.   He did not open any envelopes or
10        clean anything.   She opined that if she did not do these things for the claimant
          he would end up on the street.   However, the claimant consistently reported to
11        examiners that he had performed his own household tasks and shopping.   [(AR
          246-52, 271-74.)]   There is no report to any examining clinician that chronicles
12        this level of helplessness.   She testified that she had encouraged him to go back
          to work, but was unable to see how he would be able to go to work.
13        Particularly, the claimant smelled bad, showed up late, missed work, and could
          not perform on the job.   This is consistent with the claimant's testimony, but
14        suffers from the same credibility issues described above.   I particularly note
          that the claimant has not been noted to have poor hygiene at clinical
15        appointments, indicating he is capable of maintaining his hygiene when
          motivated.   Ultimately, Ms. Zwilling testified that she worked full time to
16        support her son.   She had spent her entire savings and was in financial ruin.   It
          is understandable that the claimant's mother is invested in the claimant attaining
17        social security benefits.

18  (AR 26-27.)

19        Lay witness testimony as to a claimant's symptoms or how an impairment affects ability

20  to work is competent evidence and cannot be disregarded without comment.   *Van Nguyen v.*

21  *Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).   *But see Molina*, 674 F.3d at 1115-22 (describing

22  how the failure to address lay testimony may be harmless).   The ALJ can reject the testimony

01  of lay witnesses only upon giving germane reasons.   *Smolen v. Chater*, 80 F.3d 1273, 1288-89

02  (9th Cir. 1996) (finding rejection of testimony of family members because, *inter alia*, they were

03  "'understandably advocates, and biased'" amounted to "wholesale dismissal of the testimony of

04  all the witnesses as a group and therefore [did] not qualify as a reason germane to each

05  individual who testified.") (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).

06        Plaintiff avers the ALJ did not even consider the function report completed by Zwilling.

07  However, the ALJ acknowledged the report in the decision.   (AR 26 (citing AR 180-87).)

08  Plaintiff also contends the ALJ failed to "acknowledge the level of help" his mother provides.

09  (Dkt. 16 at 10.)   In fact, the ALJ recognized, but rejected Zwilling's testimony as to the degree

10  of assistance she provided to plaintiff, pointing to inconsistency between her contention and

11  plaintiff's reporting, as well as an absence of any reporting by plaintiff to an examining

12  clinician consistent with Zwilling's testimony.   This reasoning was germane.   *See Carmickle*

13  *v. Comm'r of SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008) (inconsistency with activities a germane

14  reason); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (same as to medical record).

15        The ALJ also noted Zwilling's testimony was consistent with the testimony of plaintiff,

16  but found it to suffer from the same credibility issues identified in relation to plaintiff's

17  testimony.   This served as another germane reason for rejecting Zwilling's testimony.   *See*

18  *Molina*, 674 F.3d at 1114 (where ALJ provides germane reasons for rejecting the testimony of

19  one witness, ALJ need only point to those reasons upon rejecting similar testimony offered by a

20  different witness) (citing *Valentine v. Comm'r SSA*, 574 F.3d 685, 694 (9th Cir. 2009)).

21        Finally, the Court is not persuaded by plaintiff's contention the ALJ erred by improperly

22  speculating as to Zwilling's motives.   An ALJ may consider the motivation of a lay witness.

01  *See*, *e.g.*, *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (consideration of lay

02  witnesses' "'close relationship'" to claimant and possibility she was "'influenced by her desire

03  to help [him]'" served as reasons germane to lay witness).   An ALJ must, however, ensure that

04  the reasoning provided in relation to a lay witness is tied specifically to that witness, as opposed

05  to a broad generalization.   *See Valentine*, 574 F.3d at 693-94 ("[I]nsofar as the ALJ relied on

06  characteristics common to all spouses, she ran afoul of our precedents.   This does not mean an

07  ALJ must accept the testimony of a spouse who knows little about a claimant's functional

08  capacity. But the ALJ must explain such ignorance in the individual case. Similarly, evidence

09  that a specific spouse exaggerated a claimant's symptoms in order to get access to his disability

10  benefits, as opposed to being an 'interested party' in the abstract, might suffice to reject that

11  spouse's testimony.  . . . [W]e remind ALJs to tie the reasoning of their credibility

12  determinations to the particular witnesses whose testimony they reject.")   Here, the ALJ

13  properly pointed to specific statements made by Zwilling at hearing as evidencing her personal

14  investment in plaintiff's receipt of disability benefits.   (*See* AR 63 ("I exhausted all my earning

15  on, on treatments and doctors.   Physically and financially I am in ruins.   I'm completely – I

16  don't know – I cannot carry anymore.   I need professional help with, with deal.   I work

17  full-time and my son works full-time to support him."))   Plaintiff, in sum, does not

18  demonstrate error in relation to the lay evidence.

19                                                      Medical Evidence

20          "The ALJ is responsible for resolving conflicts in the medical record."   *Carmickle*, 533

21  F.3d at 1164 (citing *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).   *Accord Thomas*,

22  278 F.3d at 956-57 ("When there is conflicting medical evidence, the Secretary must determine

01  credibility and resolve the conflict.") (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th

02  Cir. 1992)).   When evidence reasonably supports either confirming or reversing the ALJ's

03  decision, the Court may not substitute its judgment for that of the ALJ.   *Tackett v. Apfel*, 180

04  F.3d 1094, 1098 (9th Cir. 1999).

05          In general, more weight should be given to the opinion of a treating physician than to a

06  non-treating physician, and more weight to the opinion of an examining physician than to a

07  non-examining physician.   *Lester*, 81 F.3d at 830.   Where not contradicted by another

08  physician, a treating or examining physician's opinion may be rejected only for "'clear and

09  convincing'" reasons.   *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).

10  Where contradicted by another physician, a treating or examining physician's opinion may not

11  be rejected without "'specific and legitimate reasons' supported by substantial evidence in the

12  record for so doing."   *Id.* at 830-31 (quoted source omitted).

13          Plaintiff argues the ALJ erred in rejecting the opinions of examining physicians Drs.

14  Dana Harmon, David Mashburn, and Cristina Diamonti.   As the record contained contrary

15  opinions from nonexamining physicians (*see* AR 79-93), the ALJ was required to provide

16  specific and legitimate reasons for rejecting the opinion evidence.

17  A.     Dr. David Mashburn

18          Dr. Mashburn evaluated plaintiff on behalf of the Department of Social and Health

19  Services (DSHS) in December 2010.   (AR 246-50.)   He opined plaintiff's moderate to severe

20  depression would cause deficits in attendance and motivation.   (AR 247.)   He also noted

21  plaintiff's report of obsessive thoughts and action, opined it "would cause problems fulfilling

22  tasks in timely manner[,]" and deemed this symptom moderate to marked.   (AR 247.)   Dr.

01   Mashburn assessed a Global Assessment of Functioning (GAF) rating of 55, indicating

02   moderate symptoms or moderate difficulty in social, occupational, or school functioning.

03   Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34.[4]

04       The ALJ found Dr. Mashburn's conclusions inconsistent with his own examination and

05   the record as a whole, and not persuasive.   (AR 27.)   She noted plaintiff scored a 29/30 on the

06   mini mental status exam (MMSE) Dr. Mashburn administered, that the record showed plaintiff

07   improved with regular treatment, and that Dr. Mashburn did not observe OCD symptoms

08   personally, "leaving him to rely on the less than credible reports of the claimant."   (*Id*.)

09       The only other objective evidence from the evaluation consists of Dr. Mashburn's

10   observation of depressive symptoms and the Hamilton depression rating scale score, the latter

11   of which is based on plaintiff's reporting in a questionnaire.   (*See* AR 247-48, 252.)   The ALJ,

12   as such, reasonably pointed to the inconsistency between Dr. Mashburn's opinions and his

13   findings on examination.   *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)

14   (rejecting physician's opinion due to discrepancy or contradiction between opinion and the

15   physician's own notes or observations is "a permissible determination within the ALJ's

16   province.")   *Cf. Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any

17   physician, including a treating physician, if that opinion is brief, conclusory, and inadequately

18   supported by clinical findings.")

19   ————————————————

20       4 The most recent version of the DSM does not include a GAF rating for assessment of mental disorders.   DSM-V at 16-17 (5th ed. 2013).   While the Social Security Administration continues to

21   receive and consider GAF scores from "acceptable medical sources" as opinion evidence, a GAF score cannot alone be used to "raise" or "lower" someone's level of function, and, unless the reasons behind the rating and the applicable time period are clearly explained, it does not provide a reliable longitudinal

22   picture of the claimant's mental functioning for a disability analysis.   Administrative Message 13066 ("AM-13066").

REPORT AND RECOMMENDATION
PAGE -18

01      The ALJ also, as discussed above, reasonably construed the record as reflecting plaintiff

02  improved with mental health treatment.   The ALJ, therefore, reasonably rejected the opinions

03  of Dr. Mashburn based on this inconsistency with the record.   *Tommasetti*, 533 F.3d at 1041.

04  (*See also* AR 246, 249 (during Dr. Mashburn's evaluation, plaintiff admitted to "'giving up too

05  soon'" repeatedly in relation to treatment).)

06      Finally, the ALJ accurately reflected Dr. Mashburn's admission that he did not observe

07  any OCD symptoms.   The ALJ provided several clear and convincing reasons for not finding

08  plaintiff entirely credible and reasonably rejected Dr. Mashburn's opinions given the apparent

09  reliance on plaintiff's less than credible reports.   *See Bray v. Comm'r of SSA*, 554 F.3d 1219,

10  1228 (9th Cir. 2009) (where treating physician's work restrictions based on subjective

11  characterization of symptoms and ALJ determined claimant's description of limitations not

12  entirely credible, "it is reasonable to discount a physician's prescription that was based on those

13  less than credible statements.")   Plaintiff, for these reasons, demonstrates no error in the ALJ's

14  assessment of the opinions of Dr. Mashburn.

15  B.   Dr. Christina Diamonti

16      Dr. Diamonti evaluated plaintiff on behalf of DSHS in November 2011.   (AR 271-74.)

17  Like Dr. Mashburn, Dr. Diamonti observed depressive symptoms, but not OCD, and assessed a

18  GAF of 55 based on "Client report."   (AR 271.)   In answering the question as to the effect of

19  current symptoms on the ability to work, Dr. Diamonti stated:

20          Mr. Moss reported: 'I am not very efficient at work because I am held back
            because of the stuff I go through with the OCD.   I can't function normally.
21          Tardiness has always been huge.   Just waking up is hard.   I feel like I never
            want to wake up.   I am always tired, low energy, low mood."

22

REPORT AND RECOMMENDATION
PAGE -19

01   (AR 272.)   In summarizing plaintiff's residual capacity, Dr. Diamonti stated:

02         Mr. Moss has reported difficulty maintaining gainful employment.   Symptoms
          of depression and OCD interfere with motivation, attendance, punctuality,
03         concentration, and focus.   He stated that he becomes easily distracted while at
          work due to intrusive obsessions, which would interfere with his ability to work
04         with the public or take necessary safety precautions.

05   (AR 272, 274.)   She found plaintiff's prognosis guarded, explaining:

06         He reports significant impairment in social and occupational functioning due to
          lack of motivation, apathy, intrusive thoughts, excessive sleep, and loss of
07         concentration.   He has not been able to maintain stable and consistent
          employment, and indicated inconsistency in his work performance.

08

09   (AR 274.)

10         The ALJ did not find the statements of Dr. Diamonti as to plaintiff's reports of social

11   and occupational functioning persuasive, "as they are merely a transcription of the claimant's

12   allegations," which the ALJ did not find credible.   (AR 27.)   "An ALJ may reject a treating [or

13   examining] physician's opinion if it is based 'to a large extent' on a claimant's self-reports that

14   have been properly discounted as incredible."   *Tommasetti*, 533 F.3d at 1041 (quoting

15   *Morgan*, 169 F.3d at 602).   *See also Bray*, 554 F.3d at 1228.   Here, as stated by the ALJ, Dr.

16   Diamonti did no more than describe plaintiff's subjective reports.

17         The ALJ also observed that plaintiff performed well on the MMSE conducted by Dr.

18   Diamonti.   While noting the ALJ's failure to acknowledge that he appeared depressed and

19   remembered only two out of three objects after five minutes, plaintiff ignores the remainder of

20   the normal MSE results.   (*See* AR 273-74.)   The ALJ, therefore, also properly considered

21   inconsistency with Dr. Diamonti's own findings.   *See Bayliss*, 427 F.3d at 1216.   Finally, the

22   ALJ noted Dr. Diamonti's opinion that plaintiff "would likely benefit from treatment at a

REPORT AND RECOMMENDATION
PAGE -20

01  community health center where he can receive ongoing case management, medication

02  oversight, and individual psychotherapy."   (AR 28, 273-74.)   The consideration of this

03  opinion provides additional support for the ALJ's determination.

04  C.    Dr. Dana Harmon

05          Dr. Dana Harmon, in November 2012, conducted an examination of plaintiff at the

06  request of plaintiff's attorney at that time.   (AR 361-76.)   The ALJ described and assessed the

07  opinions of Dr. Harmon as follows:

08          . . . I do not find some of Dr. Harmon's opinions regarding the claimant's
        cognitive and social capacity consistent with the record as a whole.   For
09      instance, Dr. Harmon opined that the claimant exhibited problems with
        concentration and confusion.   He also opined that the cognitive weaknesses
10      demonstrated on the [MMSE] would impact his ability to function in a work
        setting and "would be a significant barrier to his employment or vocational
11      rehabilitation."   Thus, he checked various boxes indicating moderate to marked
        limitations regarding the claimant's ability to make judgments on simple
12      work-related decisions and perform complex tasks.   While I have limited the
        claimant to simple repetitive work, any additional cognitive limitations are not
13      consistent with the record.   The claimant scored a 25 on the [MMSE]
        administered by Dr. Harmon, significantly lower than his performance on this
14      same test two years earlier, when he scored a 29/30.   Such a deterioration is
        inconsistent with the longitudinal record, as the claimant showed demonstrable
15      improvement with treatment as evidenced by clinical notes and the claimant's
        own admission at the hearing.   Dr. Harmon was not privy to such information,
16      as he had not [had] access to any treatment notes.

17          Dr. Harmon also assessed significant social limitations that do not appear
        consistent with the longitudinal record.   Dr. Harmon noted that the claimant
18      appeared socially isolated and that he had "[particular] difficulty interpreting the
        normal nuances of interpersonal behavior that provide the meaning to personal
19      relationships," thus he checked all social skills as "severely" limited.   However,
        the claimant was able to maintain relationships with various family members,
20      even living with one of his brothers.   He maintained two friendships and, while
        he alleged contact was infrequent, he had recently attended a poker tournament
21      with his two friends.   There is no indication in the record that the claimant acted
        inappropriate with any medical staff, though, when medicated, his counselor
22      noted that his eye contact increased amongst other signs of improvement.   In

REPORT AND RECOMMENDATION
PAGE -21

01   fact, the claimant won 12th place in a poker tournament with over 250
     contestants, indicating that he can at least read fellow players better than most.
02   The claimant reported no difficulties working with any co-workers or
     supervisors in the past, despite having been fired on numerous occasions.  I
03   have limited the claimant to no contact with the general public and a routine and
     predictable environment.   The evidence does not support further limitations.

04

05   (AR 28, internal citations to record omitted.)

06        Plaintiff objects to the ALJ's rejection of the opinion evidence from Dr. Harmon,

07   pointing to the multiple tests administered and his opinions, and maintaining the ALJ's

08   assessment of this and the other opinion evidence was irrational.   (*See* Dkt. 16 at 7 and Dkt. 18

09   at 2-3.)   The Court, however, finds no error established.   The ALJ reasonably found Dr.

10   Harmon's opinions inconsistent with both the medical record and evidence of plaintiff's

11   activities.   *Tommasetti*, 533 F.3d at 1041 (inconsistency with the record properly considered),

12   and *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (inconsistency with claimant's

13   level of activity properly considered).   She also reasonably considered that Dr. Harmon was

14   not privy to the treatment notes reflecting plaintiff's improvement.   The ALJ, as such,

15   provided specific and legitimate reasons for rejecting the opinions of Dr. Harmon.

16   D.   Other Medical Evidence

17        1.   AMEN Clinic and Community Health Clinic:

18        Plaintiff discusses other medical evidence, including an evaluation from the AMEN

19   clinic and treatment notes from Community Health Clinic.   (Dkt. 16 at 4-7.)   However, this

20   evidence does not contain any opinions as to plaintiff's functional limitations requiring

21   assessment by the ALJ.   *See Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1223

22   (9th Cir. 2010) (ALJ not required to provide clear and convincing reasons to reject physician's

REPORT AND RECOMMENDATION
PAGE -22

01 statement when statement did not assess any limitations).   Nor does the Court find any other

02 error established in the ALJ's consideration of this evidence.

03          2.    <u>Dr. Vincent Gollogly</u>:

04          Plaintiff, in his reply, appears to raise a challenge to the ALJ's consideration of opinion

05 evidence from nonexamining physician Dr. Vincent Gollogly.   (Dkt. 18 at 2.)   Plaintiff points

06 to Dr. Gollogly's narrative explanation for his opinions as to plaintiff's ability to sustain

07 concentration and persistence:   "Able to perform [simple repetitive work].   May need

08 additional time to perform tasks [due to] obsessive thoughts."   (AR 90.)   Plaintiff asserts:

09 "Not sure why ALJ may reject that testimony, as it is consistent with the medical evidence

10 provided by this claimant."   (Dkt. 18 at 2.)

11          Plaintiff waived any argument relating to the opinions of Dr. Gollogly by failing to raise

12 the issue in his opening brief.   *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th

13 Cir. 2009).   In any event, the ALJ considered this evidence from Dr. Gollogly, but did not

14 agree it supported disability.   (AR 27.)   Specifically, the ALJ noted Dr. Gollogly nonetheless

15 opined plaintiff was capable of performing other work and, thus, "must not have concluded that

16 such additional time would prevent work."   (*Id*.)   She additionally noted the inclusion in the

17 RFC of a limitation "to a routine and predictable work environment."   (*Id*.)   The ALJ, as such,

18 properly addressed and accounted for the opinion evidence from Dr. Gollogly.

19          3.    <u>Back pain</u>:

20          Although not clearly raised as a separate argument, plaintiff takes issue with the ALJ's

21 consideration of his back pain.   (*See* Dkt. 16 at 11 (discussing back pain within the context of

22 his credibility); *see also id*. at 3 (asserting the existence of other physical issues during relevant

01   time period, but clarifying he "does not request those additional impairments to become a part

02   of this claim."))   At step two, the ALJ noted plaintiff had received some treatment for back

03   pain, but that imaging showed no more than mild degenerative changes.   (AR 21 (citing AR

04   279-300, 336).)   She stated "this condition appears to have caused no more than mild

05   limitations, as the claimant did not even mention this complaint at the hearing."   (*Id*.)   The

06   ALJ, as such, did not find a severe back impairment.

07         Plaintiff denies his back pain caused no more than mild limitations, asserting he "did not

08   have good medical care and was not properly evaluated until 2/2014."   (Dkt. 16 at 11.)   He

09   states he did not mention his back pain at the hearing "because he wasn't asked by the Judge,

10   and it was a question and answer format[,]" and that his mother did not have enough time to

11   testify and was limited by the ALJ in the testimony she provided.   (*Id*.)   Plaintiff avers he

12   complained about his back pain on many occasion, notes he is on pain killers, and asserts a

13   variety of limitations imposed by his back pain.   (*Id*. at 11-12.)

14         Neither plaintiff, nor his representative made any mention of physical impairments or

15   limitations at hearing.   Although the ALJ did not specifically ask about physical impairments,

16   she did provide plaintiff with opportunities to testify as to limitations imposed by his back, by,

17   for example, asking him to explain why he could not hold down a job (AR 48-49), and why he

18   needed help with chores (AR 53).   Also, while the ALJ did clarify she wanted testimony from

19   Zwilling not duplicative of that provided in the functional report (AR 60-61), she did not in any

20   way restrict Zwilling from testifying as to physical impairments.   When specifically asked

21   whether she believed plaintiff was capable of returning to work, Zwilling focused exclusively

22   on plaintiff's mental impairments.   (AR 63-65.)   The ALJ, accordingly, reasonably

01   considered the absence of any testimony at hearing associated with plaintiff's back pain.

02   Nor does plaintiff demonstrate error in the ALJ's consideration of the medical evidence

03   associated with his back pain.  The ALJ accurately described the objective evidence.  (*See*,

04   *e.g.*, AR 336 (December 2010 x-ray of lumbar spine showing mild scoliosis, probable mild

05   narrowing of disc spaces, mild degenerative changes of facets, and normal mineralization and

06   soft tissues, and diagnosing scoliosis and mild degenerative disc and joint disease.)  Further,

07   as discussed above, the ALJ properly discounted plaintiff's testimony, the testimony of his

08   mother, and the medical opinions of record.  Plaintiff, therefore, fails to establish error in

09   relation to his back pain at step two or beyond.  *See generally Smolen*, 80 F.3d at 1290 ("An

10   impairment or combination of impairments can be found 'not severe' only if the evidence

11   establishes a slight abnormality that has 'no more than a minimal effect on an individual's

12   ability to work.'") (quoting SSR 85-28)), and *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.

13   1985) (plaintiff bears the burden of proving that an impairment is disabling).

14   <u>Evidence Returned by Appeals Council</u>

15   Plaintiff submitted to the Appeals Council medical records from Dr. Olga Parker dated

16   April 21, 2013 and medical records from Dr. Katerina Riabova dated April 26, 2013 through

17   June 19, 2013.  The Appeals Council noted the ALJ decided plaintiff's case through February

18   7, 2013, found the new information to be about a later time, and concluded the new evidence

19   did not affect the decision about whether plaintiff was disabled beginning on or before February

20   7, 2013.  (AR 2.)   The Appeals Council returned the evidence to plaintiff, indicating he

21   would need to apply again for benefits if he wanted consideration as to whether he was disabled

22   after February 7, 2013.  (*Id.*)  Plaintiff avers error by the Appeals Council, attaches the

01   evidence from Drs. Parker and Riabova to his opening brief, and maintains this "new and

02   material evidence corroborates the medical evidence as a whole, and supports that [the] ALJ

03   erred in finding [he] was able to work."   (Dkt. 16 at 9, 17-31.)

04         Social Security regulations provide:

05         In reviewing decisions based on an application for benefits, the Appeals Council
        will consider the evidence in the administrative law judge hearing record and
06         any new and material evidence only if it relates to the period on or before the
        date of the administrative law judge hearing decision. If you submit evidence
07         which does not relate to the period on or before the date of the administrative
        law judge hearing decision, the Appeals Council will return the additional
08         evidence to you with an explanation as to why it did not accept the additional
        evidence and will advise you of your right to file a new application.

09

10   20 C.F.R. § 404.976(b)(1).   In this case, the Appeals Council found the new evidence did not

11   relate to the period on or before the date of the ALJ decision, did not include the evidence in the

12   record, and returned the evidence to plaintiff as accounted for in § 404.976(b)(1).   The

13   evidence is not, therefore, properly considered by this Court as part of the record.   *Cf. Brewes*

14   *v. Comm'r of Social Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012) ("The Commissioner's

15   regulations permit claimants to submit new and material evidence to the Appeals Council and

16   require the Council to consider that evidence in determining whether to review the ALJ's

17   decision, so long as the evidence relates to the period on or before the ALJ's decision.") (citing

18   20 C.F.R. § 404.970(b)).

19         The Court may consider the evidence from Drs. Parker and Riabova pursuant to

20   "sentence six" of 42 U.S.C. § 405(g).[5]   Sentence six provides that the Court may order

21   _____

22         5 Given plaintiff's description of this evidence as "new and material" (Dkt. 16 at 9), the Court
        disagrees with the Commissioner's contention that plaintiff waived any argument that he is entitled to a

REPORT AND RECOMMENDATION
PAGE -26

01  additional evidence to be taken before the Commissioner upon a showing that the new evidence

02  is material and there is good cause for the failure to incorporate the evidence into the record in a

03  prior proceeding.   42 U.S.C. § 405(g).   To be material, "the new evidence must bear 'directly

04  and substantially on the matter in dispute.'"   *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir.

05  2001) (citation omitted).    In addition, the claimant must demonstrate a "'reasonable

06  possibility' that the new evidence would have changed the outcome of the administrative

07  hearing."   *Id.* (citation omitted).   To demonstrate good cause, the claimant must show the new

08  evidence "was unavailable earlier."   *Id.* at 463.

09         At most, plaintiff maintains the new evidence "corroborates" other evidence rejected by

10  the ALJ.   (Dkt. 16 at 9.)   He fails to show and the Court does not find a reasonable possibility

11  the new evidence would have changed the outcome of the ALJ's decision.   Moreover, even if

12  material, plaintiff fails to show he could not have obtained this evidence earlier.   "A claimant

13  does not meet the good cause requirement by merely obtaining a more favorable report once his

14  . . . claim has been denied."   *Mayes*, 276 F.3d at 463.   *See also Key v. Heckler*, 754 F.2d 1545,

15  1551 (9th Cir. 1985) (finding no "good cause" where claimant submitted medical report

16  prepared after hearing, but gave no reason for not soliciting the information sooner).   Plaintiff,

17  therefore, fails to justify a sentence six remand or to otherwise demonstrate error.

18                                            Step Five

19         Plaintiff argues the assessed RFC and corresponding hypothetical proffered to the VE

20  did not account for all of his limitations, pointing, in support, to his testimony, the lay witness

21  testimony, and the medical record.   However, because the Court finds no error in the

22  _____

    remand pursuant to "sentence six" of 42 U.S.C. § 405(g).   (*See* Dkt. 17 at 24.)

    **REPORT AND RECOMMENDATION**
    **PAGE -27**

01   assessment of the testimony or medical evidence and, therefore, the RFC and VE hypothetical,

02   this restating of plaintiff's arguments fails to establish error at step five.  *Stubbs-Danielson v.*

03   *Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

04         Plaintiff also points to the VE's testimony as eliminating jobs identified at step five.

05   To the extent the testimony pertained to limitations not included in the RFC, this argument fails

06   for the reason stated above.

07         Nor does plaintiff demonstrate error in pointing to the VE's testimony as to interactions

08   with supervisors in two of the three jobs identified at step five.   The VE testified plaintiff could

09   perform all three jobs identified at step five with an RFC limitation to only occasional, brief

10   contact with supervisors.  (AR 66-67.)   While the VE agreed on questioning that there may be

11   times in which a supervisor may need to talk to an employee for longer than a minute, such as a

12   five-minute discussion as to a change needed for an assembler job, or an instance in which a

13   supervisor may have a fifteen-to-twenty minute discussion with a housekeeper, he did not

14   disavow his prior testimony that plaintiff could nonetheless perform those jobs with the RFC

15   assessed.  (AR 68-71.)   Moreover, even if two of the three jobs identified at step five were

16   removed, plaintiff fails to demonstrate that the remaining job of sorter, with 3,820 jobs in

17   Washington and 40,970 jobs in the nation, would not satisfy the ALJ's step five burden.  *See*,

18   *e.g.*, *Gray v. Comm'r of the SSA,* No. 09-35212, 2010 U.S. App. LEXIS 2609 at \*63 (9th Cir.

19   Feb. 8, 2010) (even excluding two of three jobs identified by the ALJ, a total of 980 hand

20   bander jobs in Oregon and 59,000 of those jobs in the national economy constituted a

21   significant number of jobs supporting the ALJ's step five finding); *Thomas*, 278 F.3d at 960

22   (1,300 jobs in Oregon region and 622,000 in the national economy significant).   The Court,

REPORT AND RECOMMENDATION
PAGE -28

01  therefore, finds no error at step five.

02                                    <u>CONCLUSION</u>

03          This matter should be AFFIRMED.

04          DATED this <u>13th</u> day of August, 2014.

05

06                                                  Mary Alice Theiler
07                                                  Chief United States Magistrate Judge

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION
PAGE -29